**Jessica GONZALES, individually and as next best friend of her deceased minor children Rebecca Gonzales, Katheryn Gonzales and Leslie Gonzales, Plaintiff–Appellant,**

v.

**CITY OF CASTLE ROCK; Aaron Ahlfinger; R.S. Brink; Marc Ruisi, Officers of the Castle Rock Police Department, Defendants–Appellees.**

No. 01–1053.

United States Court of Appeals, Tenth Circuit.

Oct. 15, 2002.

---

1. We also grant Attaluri's Motion to File a Supplemental Appendix.

Brian J. Reichel, Attorney, Thornton, CO, for Plaintiff–Appellant.

Thomas S. Rice, Senter Goldfarb & Rice, L.L.C. (Eric M. Ziporin, Senter, Goldfarb & Rice, L.L.C. and Christina M. Habas, Bruno, Bruno & Colin, P.C., with him on the briefs), Denver, CO, for Defendants–Appellees.

Before SEYMOUR, McWILLIAMS and JOHN R. GIBSON,* Circuit Judges.

SEYMOUR, Circuit Judge.

Jessica Gonzales brought this action under 42 U.S.C. § 1983 individually and on behalf of her deceased minor children against the City of Castle Rock, Colorado, and Castle Rock police officers Aaron Ahlfinger, R.S. Brink, and Marc Ruisi. Ms. Gonzales alleged that plaintiffs' substantive and procedural due process rights were violated when defendant police officers failed to enforce a restraining order against her estranged husband, Simon Gonzales, after he abducted the children. While Ms. Gonzales was seeking enforcement of the order, Mr. Gonzales murdered the children. Ms. Gonzales also alleged that the City failed to properly train its police officers with respect to the enforcement of restraining orders and had a custom or policy of recklessly disregarding the right to police protection created by such orders. The district court granted defendants' motion to dismiss, concluding that Ms. Gonzales failed to state a claim under the Fourteenth Amendment for the deprivation of either substantive or proce-

---

* The Honorable John R. Gibson, Circuit Judge, United States Court of Appeals for the Eighth Circuit, sitting by designation.

dural due process. Ms. Gonzales appeals. We affirm in part, reverse in part, and remand for further proceedings.

## I

■ "In reviewing the grant of a 12(b)(6) motion, we apply the same standards as the district court." *David v. City & County of Denver*, 101 F.3d 1344, 1352 (10th Cir.1996). We accept the well-pleaded allegations in the complaint as true and construe them most favorably to the plaintiff. *Id.* "A complaint may be dismissed pursuant to Fed.R.Civ.P. 12(b)(6) only 'if the plaintiff can prove no set of facts to support a claim for relief.'" *Id.* (quoting *Jojola v. Chavez*, 55 F.3d 488, 490 (10th Cir.1995)). Viewed in this light, the complaint sets out the following tragic facts.

On May 21, 1999, Ms. Gonzales obtained a temporary restraining order against her estranged husband, Simon, in connection with her divorce proceedings. Upon issuance, the order was entered into the central registry of restraining orders, a computerized database accessible to all state and local law enforcement agencies. The order was served on Mr. Gonzales on June 4, 1999, and made permanent on that date. Under the order, Mr. Gonzales was excluded from the family home and was prohibited from molesting or disturbing the peace of Ms. Gonzales and their three daughters, ages ten, nine, and seven. The order allowed Mr. Gonzales parenting time with the girls on alternating weekends and for two weeks during the summer. The order also provided that Mr. Gonzales, "upon reasonable notice, shall be entitled to a mid-week dinner visit with the minor children. Said visit shall be arranged by the parties." Aplt.App. at A–30.

On Tuesday, June 22, 1999, sometime between 5:00 and 5:30 p.m., Simon Gonzales abducted the three girls while they were playing outside their house. Mr. Gonzales had not given advance notice to Ms. Gonzales or arranged with her for a mid-week dinner visit with the children. When Ms. Gonzales discovered the children were gone, she suspected that Simon, who had a history of suicidal threats and erratic behavior, had taken them. She called the Castle Rock Police Department for assistance at approximately 7:30 p.m. Officers Brink and Ruisi were sent to the Gonzales home, where Ms. Gonzales showed them a copy of the order, requesting that it be enforced and that the children be returned to her immediately. The Officers "stated that there was nothing they could do about the TRO and suggested that Plaintiff call the Police Department again if the three children did not return home by 10:00 p.m." Aplt.App. at A–9.

At about 8:30 p.m., Ms. Gonzales reached Simon on his cell phone and learned that he and the children were at Elich Gardens, an amusement park in Denver. Ms. Gonzales immediately called the Castle Rock police, spoke with Officer Brink, and requested that the police attempt to find and arrest Mr. Gonzales at Elich Gardens. Officer Brink refused to do so and told Ms. Gonzales to wait until 10:00 p.m. to see if Mr. Gonzales returned the children. At shortly after 10:00, Ms. Gonzales called the police to report that the children were still missing and was told by the dispatcher to wait until midnight. At midnight she again called the police and told the dispatcher the children were still gone. At that point, she went to Simon Gonzales' apartment and found that he had not returned. She called the police from the apartment complex and was told by the dispatcher to wait there until the police arrived. No officer ever came and at about 12:50 a.m. she went to the police station and met with Officer Ahlfinger. He took an incident report, but did not attempt to enforce the TRO or to locate the three children.

At approximately 3:20 a.m., Simon Gonzales drove to the Castle Rock Police Station, got out of his truck, and opened fire with a semi-automatic handgun he had purchased shortly after abducting his daughters. He was shot dead at the scene. The police discovered the three girls, who had been murdered by Simon earlier that evening, in the cab of his truck.

## II

We turn first to Ms. Gonzales' claim that defendants violated plaintiffs' rights to substantive due process by failing to enforce the restraining order. The starting point for assessing this claim is the Supreme Court's discussion of the matter in *DeShaney v. Winnebago County ·Dep't of Soc. Serv.*, 489 U.S. 189, 109 S.Ct. 998, 103 L.Ed.2d 249 (1989). There the plaintiff, a child abused by his father, sued social workers and their social services department alleging a substantive deprivation of his liberty interest occasioned by their failure to remove him from his father's custody despite knowledge of the abuse.

In support of her substantive due process claim, Ms. Gonzales points to the Colorado statute describing peace officers' duties with respect to the enforcement of such orders. As the Court indicated in *DeShaney*, however, while this statute is relevant to Ms. Gonzales' procedural due process claim, *see infra*, the language of the Due Process Clause itself must be the source of her substantive claim. *See DeShaney*, 489 U.S. at 195, 109 S.Ct. 998. In rejecting the substantive due process argument, the Court pointed out that "nothing in the language of the Due Process Clause itself requires the State to protect the life, liberty, and property of its citizens against invasion by private actors." *Id.* at 195, 109 S.Ct. 998.

If the Due Process Clause does not require the State to provide its citizens with particular protective services, it follows that the State cannot be held liable under the Clause for injuries that could have been averted had it chosen to provide them. As a general matter, then, we conclude that a State's failure to protect an individual against private violence simply does not constitute a violation of the Due Process Clause.

*Id.* at 196–97, 109 S.Ct. 998 (footnote omitted).

The Court did recognize "that in certain limited circumstances the Constitution imposes upon the State affirmative duties of care and protection with respect to particular individuals," *id.* at 198, 109 S.Ct. 998, but held that those circumstances arise only "when the State by the affirmative exercise of its power so restrains an individual's liberty that it renders him unable to care for himself." *Id.* at 200, 109 S.Ct. 998. "The affirmative duty to protect arises not from the State's knowledge of the individual's predicament or from its expressions of intent to help him, but from the limitation which it has imposed on his freedom to act on his own behalf." *Id.* The Court also pointed out that although the state may have been aware of the dangers faced by the plaintiff in *DeShaney*, "it played no part in their creation, nor did it do anything to render him any more vulnerable to them." *Id.* at 201, 109 S.Ct. 998.

█ In keeping with the discussion in *DeShaney*, this court and others have recognized two exceptions to the rule that state actors are generally not liable for acts of private violence: "(1) the special relationship doctrine; and (2) the 'danger creation' theory." *Uhlrig v. Harder*, 64 F.3d 567, 572 (10th Cir.1995). Ms. Gonzales does not contend a special relationship was created here by the state's assumption of control over an individual. We therefore turn our attention to the "danger creation" theory, under which a

state may be liable for private conduct when it takes affirmative action which creates or increases the danger to the plaintiff. *See Graham v. Indep. Sch. Dist. No. I–89,* 22 F.3d 991, 995 (10th Cir.1994).

> To make out a proper danger creation claim, a plaintiff must demonstrate that (1) the charged state entity and the charged individual actors created the danger or increased plaintiff's vulnerability to the danger in some way; (2) plaintiff was a member of a limited and specifically definable group; (3) defendants' conduct put plaintiff at substantial risk of serious, immediate, and proximate harm; (4) the risk was obvious or known; (5) defendants acted recklessly in conscious disregard of that risk; and (6) such conduct, when viewed in total, is conscience shocking.

*Currier v. Doran,* 242 F.3d 905, 918 (10th Cir.2001) (citing *Armijo v. Wagon Mound Pub. Sch.,* 159 F.3d 1253, 1262–63 (10th Cir.1998)).

■ In order to satisfy the first requirement and show that the defendant created the danger or increased the plaintiff's vulnerability to it, a plaintiff must show affirmative conduct on the part of the defendant, *Graham,* 22 F.3d at 995, "that creates, or substantially contributes to the creation of, a danger or renders citizens more vulnerable to a danger than they otherwise would have been," *Armijo,* 159 F.3d at 1263 (quoting *Reed v. Gardner,* 986 F.2d 1122,1126 (7th Cir.1993)). If this element is not shown, the substantive due process claim must fail. In assessing this factor, it is important to distinguish between affirmative conduct that creates or enhances a danger and a failure to act that merely does not decrease or eliminate a pre-existing danger. This distinction, while subtle, is critical under *DeShaney* and its progeny.

Ms. Gonzales contends the circumstances here are analogous to those in *Currier v. Doran,* 242 F.3d 905 (10th Cir. 2001), in which we held that the plaintiff had set out the requisite affirmative conduct in support of his substantive due process claim. In *Currier,* however, we took great care to point out that "[t]he danger creation theory . . . focuses on the affirmative actions of the state in placing the plaintiff in harm's way." *Id.* at 919. We concluded there that a defendant social worker had acted affirmatively by recommending that a parent be given legal custody of a child despite the defendant's knowledge of evidence and allegations that the parent had previously abused the child. While we observed that the defendant had also failed to investigate or act on the allegations of abuse, we noted that this failure to act "should be viewed in the general context of the state's affirmative conduct in removing the children from their mother and placing the children with their father." *Id.* at 920 n. 7.

■ Although in the present case Ms. Gonzales attempts to characterize defendants' conduct as affirmative interference with the protection provided by the restraining order, in the end the individual defendants simply failed to act by refusing to enforce the order. Their failure, while it did not reduce the danger posed by Simon Gonzales' abduction of the girls, did not create or enhance that danger. This lack of affirmative conduct is fatal to Ms. Gonzales' substantive due process claim. *See Graham,* 22 F.3d at 995 (substantive due process argument must fail when plaintiffs unable to "point to any affirmative actions by the defendants that created or increased the danger to the victims.").

### III

We reach a different result with respect to Ms. Gonzales' procedural due process argument. This claim requires that we address an issue the Supreme Court did not reach in *DeShaney* because it was not

timely raised—whether the state statute at issue gives "an 'entitlement' to receive protective services in accordance with the terms of the statute, an entitlement which would enjoy due process protection against state deprivation under our decision in *Board of Regents of State Colleges v. Roth,* 408 U.S. 564, 92 S.Ct. 2701, 33 L.Ed.2d 548 (1972)." *DeShaney,* 489 U.S. at 195 n. 2, 109 S.Ct. 998.

In *Roth,* the Court pointed out that "[t]he Fourteenth Amendment's procedural protection of property is a safeguard of the security of interests that a person has already acquired in specific benefits. These interests—property interests—may take many forms." *Roth,* 408 U.S. at 576, 92 S.Ct. 2701. Property interests "are created and their dimensions are defined by existing rules or understandings that stem from an independent source such as state law—rules or understandings that secure certain benefits and that support claims of entitlement to those benefits." *Id.* at 577, 92 S.Ct. 2701. "To have a property interest in a benefit, a person clearly must have more than an abstract need or desire for it. He must have more than a unilateral expectation of it. He must, instead, have a legitimate claim of entitlement to it." *Id.* When, as here, a plaintiff contends that a constitutionally protected property interest is created by a state statute, we have held that such an interest arises when "the regulatory language is so mandatory that it creates a right to rely on that language thereby creating an entitlement that could not be withdrawn without due process." *Cosco v. Uphoff,* 195 F.3d 1221, 1223 (10th Cir.1999) (per curiam).

Ms. Gonzales relies on the language in the Colorado statute defining the crime of violating a restraining order and the duties of peace officers in that regard. Under that provision, officers "*shall* use every reasonable means to enforce a restraining order," Colo.Rev.Stat. § 18–6–803.5(3)(a) (2002) (emphasis added), and "*shall* arrest, or, if an arrest would be impractical under the circumstances, seek a warrant for the arrest of a restrained person when the peace officer has information amounting to probable cause that ... [t]he restrained person has violated or attempted to violate any provision of a restraining order," *id.* § 18–6–803.5(3)(b)(I) (emphasis added). Ms. Gonzales contends the mandatory nature of the italicized language imposes a mandatory obligation on police officers to enforce the order and to arrest violators, and therefore gives persons with a restraining order a legitimate claim of entitlement to the protection the order is intended to provide.

In making this argument, Ms. Gonzales relies on cases from other jurisdictions holding that a property interest is created in a domestic violence restraining order. For example, in *Siddle v. City of Cambridge,* 761 F.Supp. 503 (S.D.Ohio 1991), the court concluded that a protective order obtained pursuant to state law "creates a property right which incurs a duty on the part of the government." *Id.* at 509. The state statute there provided that "any officer of a law enforcement agency *shall* enforce a protection order issued ... by any court in this state in accordance with the provisions of the order." Ohio Rev. Code Ann. § 3113.31(F)(3) (West 2002) (emphasis added). The court observed that holders of protective orders are entitled to greater rights than other citizens and that such an order "would have no valid purpose unless a means to enforce it exists." *Siddle,* 761 F.Supp. at 509.

In *Coffman v. Wilson Police Dep't,* 739 F.Supp. 257 (E.D.Pa.1990), the court held that the state statute governing enforcement of protective orders did not create a property interest in police protection because the statute provided only that an arrest *may* be without a warrant upon

violation of the order. But the court did hold that the order itself created an enforceable interest based on its requirement that the appropriate police department *shall* enforce it. *Siddle* and *Coffman* thus both hold that use of the word "shall" to impose a mandatory duty on police to enforce a protective order creates a legitimate claim of entitlement to, and thus a protected property interest in, the protection provided by the order. "The word 'shall' is mandatory, not precatory, and its use in a simple declarative sentence brooks no contrary interpretation." *Id.* at 264.

In our case, the governing statute provides that an officer *shall* use every reasonable means to enforce an order and *shall* arrest a restrained person when the officer has information amounting to probable cause that the person has violated the order. The district court concluded that, notwithstanding the mandatory language used in the statute, no legitimate claim of entitlement to the enforcement duties set out therein could arise because those duties are only triggered when probable cause exists to believe that the restraining order has been violated. In the district court's view, determination of the existence of probable cause is discretionary and therefore cannot be the predicate for a mandatory duty. We disagree.

The Colorado courts have stated unambiguously that in Colorado statutes, "shall" does in fact mean "shall." "The word 'shall,' when used in a statute, involves a 'mandatory connotation' and hence is the antithesis of discretion or choice." *Colorado v. Guenther*, 740 P.2d 971, 975 (Colo. 1987); *see also Allison v. Indus. Claim Appeals Office*, 884 P.2d 1113, 1119–20 (Colo.1994); *Hernandez v. District Court*, 814 P.2d 379, 381 (Colo.1991). Moreover,

the legislative history of the statute at issue clearly indicates that the legislature intended to impose a mandatory obligation on the police as well as on others involved in the criminal justice system who deal with domestic abuse.

> First of all, . . . the entire criminal justice system must act in a consistent manner, which does not now occur. *The police must make probable cause arrests.* The prosecutors must prosecute every case. Judges must apply appropriate sentences, and probation officers must monitor their probationers closely. And the offender needs to be sentenced to offender-specific therapy.
>
> So this means the entire system must send the same message and enforce the same moral values, and that is abuse is wrong and violence is criminal. And so we hope that House Bill 1253 starts us down this road.

Brief of Aplt, attach., transcript of Colorado House Judiciary Committee Hearings on House Bill 1253, Feb. 15, 1994, at 3 (emphasis added).

■ Under the statute here, "[a] peace officer shall use every reasonable means to *enforce* a restraining order." Colo.Rev. Stat. § 18–6–803.5(3)(a)(2002) (emphasis added). This mandatory duty is not premised upon the existence of probable cause, presumably because an arrest is not always necessary to enforce a restraining order. Moreover, the fact that the officer's mandatory duty extends only to the use of every reasonable means of enforcement does not negate a legitimate claim of entitlement to the use of those means. *See Siddle*, 761 F.Supp. at 509 (holding that property interest in enforcement extends to reasonable efforts under the circumstances).[1]

---

1. We do not imply that every use of the word "shall" in a statute will support a procedural due process claim. For example, a property right enforceable by the procedural due process clause requires that the "shall" language in a statute mandate a specific substantive outcome rather than merely referring to pro-

■ The complaint in this case, viewed favorably to Ms. Gonzales, indicates that defendant police officers used no means, reasonable or otherwise, to enforce the restraining order. Under these circumstances, we conclude that Ms. Gonzales has effectively alleged a procedural due process claim with respect to her entitlement to enforcement of the order by every reasonable means.

■ The statute also imposes a duty on peace officers to *arrest* "when the peace officer has information amounting to probable cause" that the restrained person has violated or attempted to violate the restraining order. COLO.REV.STAT. § 18–6–803.5(3)(b)(2002). We do not agree with the district court that because the officer's mandatory duty to arrest only arises upon the existence of facts giving rise to probable cause, no legitimate claim of entitlement can ever exist. In our view, the statute clearly creates a mandatory duty to arrest when probable cause is present. It follows that the holder of an order has a legitimate claim of entitlement to the protection provided by arrest when the officer has information amounting to probable cause that the order has been violated. The existence of probable cause is an objectively ascertainable matter evaluated on the basis of what a reasonably well-trained officer would know. *See Malley v. Briggs*, 475 U.S. 335, 345, 106 S.Ct. 1092, 89 L.Ed.2d 271 (1986); *United States v. Davis*, 197 F.3d 1048, 1051 (10th Cir.1999).

It therefore is not a matter committed to the officer's subjective discretion. *See Nearing v. Weaver*, 295 Or. 702, 670 P.2d 137, 142 & n. 7 (1983) (duty to arrest domestic order violator not discretionary despite requirement that arrest be supported by probable cause); *Campbell v. Campbell*, 294 N.J.Super. 18, 682 A.2d 272, 274–75 (1996) (same).

Our review of the complaint in the light most favorable to Ms. Gonzales reveals that she has stated a procedural due process claim with respect to her entitlement to have Simon Gonzales arrested. She alleged that under the restraining order, Simon Gonzales was entitled to a mid-week dinner visit only upon reasonable notice and arrangement between the parties, and that no notice or arrangement had preceded his abduction of the children. She alleged that she showed defendant officers the order and told them that Simon had taken the children in violation of its provisions. These allegations, along with the invocation of the state statute defining the duties of peace officers with respect to the violation of protective orders, set out a constitutional deprivation sufficient to withstand a motion to dismiss under Fed. R.Civ.P. 12(b)(6).

■ Accordingly, we reverse the district court's decision that Ms Gonzales has failed to state a claim and remand for further proceedings in light of this opinion.[2] The City's argument that Ms. Gon-

---

cedures. *See, e.g., Doe v. Milwaukee County*, 903 F.2d 499, 502–04 (7th Cir.1990); *cf. Doyle v. Okla. Bar Ass'n*, 998 F.2d 1559, 1570 (10th Cir.1993) (same re liberty interest). Here, however, the statute mandates not merely a procedure, but a specific outcome, enforcement of a restraining order.

**2.** Defendants have filed a motion to strike documents attached by Ms. Gonzales to her brief on appeal. These materials, which consist of three state statutes and their legislative

history, are required under the rules. *See* Fed. R.App. P. 28(f). Moreover, they are properly subject to judicial notice under Fed. R.Evid. 201, which may be taken at any stage in the proceedings. *See United States v. One (1) 1975 Thunderbird 2–Door Hardtop*, 576 F.2d 834, 836 (10th Cir.1978) (judicial notice of state statutes); *Adarand Constr., Inc. v. Slater*, 228 F.3d 1147, 1168 n. 12 (10th Cir. 2000) (judicial notice of content of hearings before legislative committees). Accordingly, defendants' motion is denied.

zales could not establish municipal liability and the individual defendants' contention that they are entitled to qualified immunity are matters to be considered in the first instance by the district court on remand.

**REVERSED** and **REMANDED** for further proceedings.